Scileppi, J. (dissenting).
I dissent and vote to modify.
We are called upon to consider the question of whether a mortgagee who bid in the full amount of the secured debt at a foreclosure sale, retains, as against the insurer alone, any insurable interest entitling it to sue on a fire insurance policy under a mortgagee loss payable clause. The answer, as proffered by the majority, categorically denies that right, in part because the right itself upon discharge of the debt more properly inures to the benefit of the mortgagor or some conjectured subsequent lienor.
Though it is true that the great weight of authority, commentators and the courts of sister States alike, hold that if subsequent to the .loss the mortgagee has had its debt satisfied by purchase at a foreclosure sale, either by the mortgagee or a stranger, the mortgagee’s rights under the policy are terminated (Glen Cove Trust Co. v. Trypuc, 110 N. Y. S. 2d 368, affd. 281 App. Div. 1034; Insurance Co. of North Amer. v. State Sav. & Loan Assn., 425 F. 2d 1180; Transport Realty Co. v. Commercial Union Ins. Co. of N. Y., 404 F. 2d 892, 895; Rosenbaum v. Funcannon, 308 F. 2d 680, 683-685; Lutheran Brotherhood v. Hooten, 237 So. 2d 23 [Fla.]; Power Bldg. & Loan Assn. v. Ajax Fire Ins. Co. 110 N. J. L. 256; 5A Appleman, Insurance Law and Practice [rev. ed., 1970], § 3403, pp. 301-302; 5 Couch, Insurance 2d, § 29.75-29.77; 38 N. Y. Jur., Mortgages and Deeds *339 of Trust, § 143, pp. 277-278), that rule has most often been invoked in situations where the mortgagee seeks to recover on the policy to the exclusion of the mortgagor or subsequent lienors (see, e.g., Glen Cove Trust Co. v. Trypuc, 110 N. Y. S. 2d 368, 371, affd. 281 App. Div. 1034, supra; Sea Isle Operating Corp. v. Hochberg, 198 So. 2d 336 [Fla.]; Northwestern Nat. Ins. Co. v. Mildenberger, 359 S. W. 2d 380 [Mo.]; Insurance Co. of North Amer. v. State Sav. & Loan Assn., 425 F. 2d 1180, supra; Rosenbaum v. Funcannon, 308 F. 2d 680, supra), and should have no application to the situation before us, involving as it does only the respective rights and obligations of the mortgagee and the named insurer. Similarly, the right of a mortgagee to recover under a loss payable clause cannot be said to become immutably fixed at the time of the loss. Nevertheless, we do not have before us a question of waiver, estoppel or assignment, and the a priori assumption that the discharge of the debt similarly works to preclude recovery on the policy, is the question of law presently in issue. The majority effortlessly concludes that it does, and holds that summary judgment was proper. Presented with the allegation, which the majority seems to ignore, in the verified complaint that the mortgagee was induced by earlier representations to proceed with the foreclosure, the conclusion is irresistible that the bid itself was inflated by the proposed settlement of claim; and to that extent, the question of whether the debt was fully discharged was one of fact, thus precluding summary judgment. Assuming, however, that the debt was in fact fully discharged, there remains the question of whether satisfaction of the debt in the first instance terminates the mortgagee’s rights under the policy.
It is conceded that a mortgagee is entitled to but one satisfaction of his debt. None would dispute, however, that payment should be made on the loss insured against. "While the majority seeks assiduously to protect against a “double recovery,” it chooses to ignore the fact that the defendant, having collected premiums on the policy, may never be called upon to answer for the loss. Indeed, it suggests that others, namely, the mortgagor or some subsequent lienor, may proceed under the policy, although we have no way of knowing whether that right, if it exists, will ever be exercised. Manifestly, the question reduces *340 itself to just this: who, as between the mortgagee and the insurer, should reap the benefits of the policy? That at some remote date the mortgagor or another person entitled to proceed under the policy may seek to exercise their rights is, quite simply, besides the point.
Although it is generally true that foreclosure operates as a payment of the mortgage debt to the extent of the amount actually received as the sale price (2 Wiltsie, Mortgage Foreclosure [5th ed.], § 830), that rule has no application to the ease before us, as pro tanto reduction of the debt on foreclosure relates only to the respective obligations subsisting between the mortgagor and mortgagee and cannot be asserted by a third party seeking to avoid liability on a lawful claim.
Under the mortgage clause the policy issued by the defendant insured the mortgagee’s interest as fully and to the same extent as if it had taken out a policy directly with the insurance company (Eddy v. London Assur. Corp., 143 N. Y. 311, 322; Goldstein v. National Liberty Ins. Co., 256 N. Y. 26, 32; Heilbrunn v. German Alliance Ins. Co., 140 App. Div. 557, 559, affd. 202 N. Y. 610). The plaintiff herein had an independent insurable interest in the premises and independent of the owner it could have procured a policy of insurance against loss by fire payable directly to it, and separate and distinct from any policies taken or held by the mortgagor (Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, 51-52; Goldstein v. National Liberty Ins. Co., 256 N. Y. 26, supra). A fire occurred and caused damage to the mortgaged property. Undoubtedly, the plaintiff had the right to insist upon the payment of the amount by which the property, which was subject to the lien was diminished (Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, supra); and that same rule would apply where the property, after damage, still furnished sufficient security for the payment of the debt. The question remains, therefore, whether the insurer could defeat the claim by its inaction where the mortgagee, prior to settlement, proceeds against the security. The answer to that question relates solely to a construction of the policy.
The policy, including the mortgagee clause, was intended as assurance against loss or damage to the property and thus, *341 to furnish collateral security for payment of the debt (Kernochan v. New York Bowery Fire Ins. Co., 17 N. Y. 428; Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, 53, supra). It was intended to protect both the mortgagee’s as well as the mortgagor’s interest and any loss was payable, according to its terms, to the mortgagee as its interest might appear. By its terms, when a fire occurs, the insurance company must pay the mortgagee for damages sustained and, however it may affect equities between the mortgagee and mortgagor by reducing the debt, it does not affect the terms of the contract between the mortgagee and the insurer. The contingency having occurred against which the policy protected, it must be paid according to the status of the interest at that time, regardless of the effect of subsequent events on that status (Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, 53, supra). That the security remains sufficient to satisfy the debt “is not by the contract made of any importance; in either case it is insured against and the amount of it is to be paid” (Kernochan v. New York Bowery Fire Ins. Co., supra, p. 435; Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, 53, supra; Excelsior Fire Ins. Co. v. Royal Ins. Co., 55 N. Y. 343).
Not do I agree with the defendant’s efforts to limit our decision in Eddy v. London Assur. Corp. (143 N. Y. 311, supra) to instances where a deficiency remains after the foreclosure sale. To so hold would be to insure, at the expense of the mortgagee, the defendant’s right to pro tanto subrogation and so to ignore the condition of the policy which provides that the insurer’s right to subrogation shall not impair the mortgagee’s right to recover the full amount of his claim. As we held in the Eddy case that clause is to be given effect, and “ the right of subrogation [is] dependent upon the fact that its exercise shall not in any manner impair the right of the mortgagee to full payment of his claim ’ ’ (Eddy v. London Assur. Corp., 143 N. Y. 311, 320, supra). Thus, if the insurer desires immediate subrogation, as it might, pursuant to the terms of the contract, its remedy is to pay the whole debt and take an assignment of the bond and mortgage. In default of such action, the mortgagee’s rights to proceed and to obtain full payment cannot be impaired (id., at p. 319).
*342 The policy issued by the defendant contained a provision that the insurance of the mortgagee’s interest should not be invalidated by any act or neglect of the mortgagor or owner of the property, nor by any foreclosure or other proceedings or notice of sale relating to the property. Consequently, the mortgagee violated no contract on his part when it commenced the proceedings to foreclose the mortgage and thus, endeavor to collect the debt. Simply speaking, it was strictly within its legal rights in so doing and the foreclosure proceedings did not affect the exercise of those rights under the policy. This was expressly provided for and agreed to by the contracting parties.
Moreover, our decision in Savarese v. Ohio Farmers Ins. Co. (260 N. Y. 45, supra), demonstrates, contrary to the urgings of the defendants, that there is nothing remiss in allowing recovery on the policy of insurance, although the insured has retained the full benefits of the security. We held there, that where the policy obtained by the mortgagor provides that the loss or damage, if any, shall be payable to the mortgagee ‘ ‘ as interest may appear,” that the insurer must pay to the mortgagee the loss occasioned by the fire, despite the fact that the mortgagor has had the damage fully repaired (Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45, supra). “ The time of the fire * * * established the rights of the parties, and * * * the amount of the loss payable to the mortgagee became fixed as of that time ” {id., at p. 54, emphasis added). The defendant should not profit by the diligence of plaintiff in foreclosing the mortgage by avoiding payment of a just claim.
Accordingly, the order appealed from should be modified to the extent of striking the provision thereof awarding summary judgment in favor of defendant and dismissing the complaint, and the order of Special Term, denying the same, be reinstated.
Chief Judge Fuld and Judges Bergan, Jasen and Gibson concur with Judge Breitel ; Judge Scileppi dissents and votes to modify in a separate opinion in which Judge Burke concurs.
Order affirmed.